**Ruth Evans KENNEDY, Administratrix of the Estate of Martha Ellen Kennedy, Deceased, Plaintiff,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.**

**No. LR–68–C–128.**

United States District Court
E. D. Arkansas, W. D.
Jan. 30, 1969.

Ike Allen Laws, Jr., Russellville, Ark., for plaintiff.

Sam Laser, Little Rock, Ark., for defendant.

### Memorandum and Order

HENLEY, Chief Judge.

This insurance case was commenced in the Circuit Court of Pope County, Arkansas, on June 5, 1968, and was timely removed to this Court by the defendant on the basis of diversity of citizenship and the requisite amount in controversy. Answer was filed on July 1. On December 30 plaintiff filed a Motion For Nonsuit; the reason for the motion is that plaintiff desires to prosecute her claim against the defendant in the Superior Court of DeKalb County, Georgia, in which Court she filed a complaint a few weeks prior to the filing of the motion to dismiss this case without prejudice. The motion is resisted by the defendant and has been submitted on memorandum briefs.

On May 17, 1967, the defendant issued in Arkansas to Martha Ellen Kennedy, a citizen of this State, a standard form automobile insurance policy which provided uninsured motorist protection in accordance with the requirements of Ark.Stats.Ann., § 66–4003. The limits of the coverage were the minimum statutory limits of Ten and Twenty Thousand. The policy also provided what is commonly called medical payments coverage to the extent of $1,000 per person.

In August 1967 the insured was killed in an automobile accident in Atlanta, Georgia; at the time of the accident the insured was a passenger in another person's automobile, and that person's insurance policy issued by The Travelers Insurance Co. extended uninsured motorist protection to the insured to the same extent as did her own policy. It seems clear that the accident was due to the negligence of an uninsured motorist, or at least Travelers recognized liability under its policy which provided "primary coverage" and paid to the estate of the insured the full single policy limit of $10,000.

By her action plaintiff seeks to recover from the defendant an additional $10,000 under the uninsured motorist coverage of the policy issued to the insured, $1,000 under the medical payments coverage, a statutory penalty, and attorney's fee, and the costs of the action.

Defendant admits that it owes the plaintiff a small sum of money under the medical payments coverage but denies that it owes anything under the uninsured motorist endorsement of the policy. The position of the defendant is based upon the following policy provisions:

"Other Insurance. With respect to bodily injury to an insured while occupying an automobile not owned by a named insured under this coverage, the insurance hereunder shall apply only as excess insurance over any other similar insurance available to such occupant, and this insurance shall then apply only in the amount by which the applicable limit of liability of this coverage exceeds the sum of the applicable limits of liability of all such other insurance.

"Subject to the foregoing paragraph, if the insured has other similar insurance available to him against a loss covered by this coverage, then the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable under this coverage

for a greater proportion of the applicable limit of liability of this insurance and such other insurance."

Defendant points out the limit of its uninsured motorist coverage is the same as the limit of the coverage provided by Travelers so that, according to defendant, there is no liability under its uninsured motorist endorsement.

The provisions relied on by defendant prohibit what is commonly called the "stacking" of uninsured motorist coverage where an insured is protected by more than one automobile insurance policy providing such coverage.

When this suit was commenced, the Supreme Court of Arkansas had not passed upon the validity of those provisions, but they had been held invalid by two federal courts in Arkansas. Robey v. Safeco Ins. Co., W.D.Ark., 270 F. Supp. 473, aff'd 8 Cir., 399 F.2d 330; Childers v. Southern Farm Bureau Casualty Ins. Co., E.D.Ark., 282 F.Supp. 866. In those cases the view was taken that the prohibition against "stacking" of uninsured motorist coverage violated the Arkansas statute which has been mentioned, and that the prohibition was void for that reason.

On September 23, 1968, the Supreme Court of Arkansas handed down its decision in M.F.A. Mutual Insurance Co. v. Wallace, 245 Ark. 227, 431 S.W.2d 742, and reached a result directly opposite to that reached by the Arkansas Federal District Courts and by the Court of Appeals. It was held that the purpose of the Arkansas statute was to afford an insured as much, but no more, protection with respect to injuries resulting from the negligence of an uninsured motorist as he would have had if his injury had been caused by the negligence of a motorist carrying liability insurance providing the minimum Ten and Twenty Thousand coverage required by the Arkansas financial responsibility law. Ark.Stats.Ann., § 75–1427.

If this case is governed by Arkansas law, and if *Wallace* applies, as it apparently does, plaintiff cannot prevail in this Court which, of course, is bound by the ruling decision of the Supreme Court of Arkansas. Plaintiff hopes that she can prevail in the courts of Georgia and for that reason desires to discontinue this action.

The matter of voluntary dismissals of actions in the federal courts is governed by Rule 41(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. Insofar as here pertinent, Rule 41(a) (2) provides that after an answer or motion for summary judgment has been filed by a defendant, a plaintiff may not dismiss his action without prejudice "save upon order of the court and upon such terms and conditions as the court deems proper."

It is now settled beyond question that in view of the provisions of Rule 41(a) (2) a plaintiff does not have an absolute right to take a nonsuit after that Rule has come into play. Whether, and upon what terms and conditions a complaint may be dismissed without prejudice are matters to be decided by the District Court in the exercise of its judicial discretion. The Court may in its discretion refuse to permit the discontinuance of the action; if dismissal without prejudice is permitted, the permission should ordinarily be properly conditioned in the areas of costs, expenses, attorney's fees, and the like. Where a dismissal without prejudice would subject the defendant to substantial legal prejudice, as contrasted to mere inconvenience or vexation incident to defending a subsequent suit, permission to so dismiss should be denied. However, ordinarily the motive of the plaintiff in seeking to dismiss is not material, and the fact that a nonsuit may give the plaintiff some tactical procedural advantage in the same or in some other forum is not grounds for refusing to allow the dismissal. 2B Barron & Holtzoff, Federal Practice & Procedure, § 912; Johnston v. Cartwright, 8 Cir., 355 F.2d 32; Reynolds v. Wabash R. Co., 8 Cir., 236 F.2d 387; New York, Chicago

& St. Louis R. Co. v. Vardaman, 8 Cir., 181 F.2d 769; Home Owners' Loan Corporation v. Huffman, 8 Cir., 134 F.2d 314.

■ For the reasons to be stated, the Court has come to the conclusion that plaintiff's Motion For Nonsuit should be denied.

If the plaintiff is permitted to dismiss her complaint here without prejudice, and if she proceeds against the defendant in Georgia, the courts of that State will have to determine by reference to the Georgia law of conflicts of laws what body of law controls the validity of the prohibition against "stacking" upon which defendant relies.

If, as seems likely, the Georgia courts apply the law of Arkansas as announced in the Wallace case, plaintiff will be no better off in Georgia than she is here. It is possible, however, that the Georgia courts will apply some other body of law which would invalidate the anti-stacking provision of the policy, and the defendant might ultimately be found liable to the full extent of its uninsured motorist coverage and might be subjected to penalty and attorney's fee under the law of Georgia. In the latter connection the Court notes that plaintiff in her Georgia complaint is asking for a penalty of 25 percent of the amount of the judgment which is more than twice the penalty which Arkansas law allows.

It is clear that plaintiff by her motion is seeking something quite different from a tactical procedural advantage. She desires to have her new forum apply to this case another body of substantive law which would or might deprive the defendant of an apparently good defense at this forum. Thus, the shift of forum, if permitted, would or might seriously disadvantage the defendant, and the Court thinks that it would amount to legal prejudice to subject the defendant to the risk that plaintiff may succeed in inducing the Georgia courts to refuse to apply Arkansas law to the policy in suit.

In Home Owners' Loan Corporation v. Huffman, supra, 134 F.2d at 318, the Court said:

" * * * If it were demonstrated that the defendant would lose the advantage which it now has by a change of forum that might be reason for holding that the court abused its discretion by permitting a dismissal without prejudice even had terms been imposed. In speaking of the result of a dismissal without prejudice by a plaintiff for the purpose of beginning a suit in another court, Judge Learned Hand in Young v. Southern Pac. Co., 2 Cir., 25 F.2d 630, 632, said: ' * * one court is as good as another. But the situation changes when there is substantial doubt whether the courts will not apply different rules, and when the plaintiff's purpose is so to maneuver the litigation that the defendant will lose his existing advantage. The loss of the federal forum then becomes a grave prejudice, quite as much as, and indeed more than, the expense and delay in trying the suit up to decree, or even the failure of a cross-bill.' "

A case which strikingly resembles this one is Southern Maryland Agricultural Association of Prince George's County v. United States, D.C.Md., 16 F.R.D. 100. In that case the plaintiff commenced an income tax refund suit in the United States District Court in Maryland on the strength of a prior decision of that Court favorable to the taxpayer in a similar situation. There had been an appeal from the earlier decision, and while plaintiff's complaint was pending and after the Government had answered, the Court of Appeals for the Fourth Circuit reversed the earlier decision of the District Court. Plaintiff thereupon moved to dismiss its complaint without prejudice for the avowed purpose of proceeding in the Court of Claims where it hoped that a more favorable approach to the refund claim would be taken.

Plaintiff's motion was denied with the Court stating (p. 102 of 16 F.R.D.): "This type of forum shopping has no sanction." The Court then proceeded to quote the same portion of the opinion in *Huffman*, supra, which has been quoted heretofore in this memorandum. The Court also said (p. 103 of 16 F.R.D.): "Plaintiff chose the forum which it believed to be most advantageous to it. There is no equity in its present effort to revoke that choice."

It is accordingly considered, ordered, and adjudged that plaintiff's Motion For Nonsuit be, and the same hereby is, denied.