Robert E. DRAPER, Ronald O. Perelman, Saul J. Farber, Howard Gittis, Ann Dibble Jordan, David J. Mahoney, Paul A. Marks, Linda Gosden Robinson, and National Health Laboratories Incorporated, Defendants Below, Appellants,

v.

PAUL N. GARDNER DEFINED PLAN TRUST, Eric Ballan and Davis Jaroslawicz, Plaintiffs Below, Appellees.

Supreme Court of Delaware.

Submitted: May 12, 1993.
Decided: May 28, 1993.

Rodman Ward, Jr. (argued), and Jay W. Eisenhofer, Skadden, Arps, Slate, Meagher & Flom, Wilmington, for individual appellants.

Stephen E. Jenkins, Ashby & Geddes, Wilmington, for Nat. Health Laboratories, Inc.

Joseph A. Rosenthal (argued), and Kevin Gross, Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington, for appellees; Goodkind, Labaton, Rudoff & Sucharow, New York City, Milberg, Weiss, Bershad, Specthrie & Lerach, San Diego, CA, Wolf, Popper, Ross, Wolf & Jones, New York City, of counsel.

Before VEASEY, C.J., WALSH and HOLLAND, JJ.

VEASEY, Chief Justice.

Before the Court is an expedited appeal of an order of the Court of Chancery granting leave to plaintiffs to dismiss these derivative actions, without prejudice, upon the payment of the costs. The resulting dismissal of this action was a voluntary dismissal pursuant to Chancery Rule 41(a)(2), the defendants having filed answers and a motion for summary judgment.[1] Whether or not to grant leave of court for such a voluntary dismissal is a matter for the exercise of discretion by the trial court, *Lunn v. United Aircraft Corp.*, 26 F.R.D. 12, 18 (D.Del.1960), and will be reversed by this Court only upon a showing of an abuse of that discretion. *Husband (B.E.M.) v. Wife (D.A.M.)*, Del.Supr., 428 A.2d 1148, 1150 (1981). In holding that plaintiffs' motion to dismiss should be granted, the trial court found that "defendants have not shown that they will be unfairly prejudiced by the dismissal and [the dismissal] ... is in the interest of justice and judicial economy...." *Gardner v. Draper*, Del.Ch., C.A. Nos. 12,-825NC, 12,827NC, and 12,828NC, 1993 WL 125517 (Apr. 8, 1993) (letter opinion at 2).

---

**1.** In *Rand v. The Signal Companies Inc.*, Del. Supr., No. 366, 1985, 502 A.2d 979 (Table) Horsey, J. (Dec. 3, 1985) (Order), the order granting leave of a plaintiff to dismiss and staying certain other actions was viewed as interlocutory, and leave to file the interlocutory appeal was refused. Because there is a dismissal here, and not a stay, all parties apparently treat the order of the Court of Chancery as final, not interlocutory. We consider the matter before us as an appeal of a final order.

In addition to their contention that the Vice Chancellor abused his discretion, defendants argue that the Vice Chancellor committed an error of law in the definition and application of the legal factors governing a motion to dismiss. In particular, defendants argue that the trial court gave improper weight to plaintiff's choice of forum. Defendants contend that in a stockholder derivative suit, a plaintiff's choice of forum is entitled to no weight, and that these cases should proceed in Delaware because they are brought on behalf of the corporation. Therefore, it is argued that lawyers for stockholders seeking to assert the corporation's claims derivatively cannot control the choice of forum. We do not believe that the Vice Chancellor regarded plaintiffs' choice of California as their preferred forum as either determinative or of significant weight. The trial court's decision was based on judicial economy and lack of a showing of plain legal prejudice.[2] Hence, we hold that defendants' argument that the Vice Chancellor committed an error of law is without merit.

This case involves solely the issue of abuse of discretion. Here the Vice Chancellor was concerned about simultaneous litigation of the same issues on two coasts, and he held that judicial economy dictates that litigation in one forum may go forward and that in the other must be dismissed. In granting plaintiffs' motion to dismiss the Delaware actions, the Vice Chancellor exercised his discretion on a rational basis. We do not find an abuse of his discretion, whether or not we would have made the same decision in the first instance. Accordingly, we affirm.

## I. FACTS

We summarize the facts in the light most favorable to defendants for purposes of this appeal. National Health Laboratories, Incorporated ("NHL") is a Delaware corporation with its principal place of business in San Diego, California. NHL is one of the leading clinical laboratory companies in the United States. It offers a broad range of testing services used by the medical profession in the diagnosis, monitoring, and treatment of diseases. It has grown into a network of 16 major laboratories, serving customers in 42 states. Plaintiffs allege that they are NHL stockholders and were such at all relevant times. The defendants include NHL, the corporation on whose behalf these derivative actions are brought, one former director, and all of the current directors except two.

In December 1992, after a federal investigation involving certain alleged practices by NHL's employees to solicit Medicare business from physicians by providing allegedly improper price discounts, NHL pleaded guilty to two counts of presenting false claims to the Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS"). In addition, defendant Draper, the former president and chief executive officer of NHL, pleaded guilty to two counts of presenting false claims—one to CHAMPUS and one to a state Medicaid program. In connection with its plea agreement, NHL has paid a total fine of $1,000,000. Simultaneously, NHL settled civil claims involving the Medicare and Medicaid programs, under the terms of which settlements NHL will not be excluded from Medicare, Medicaid, or CHAMPUS work, but will pay a total of $100,000,000 to the federal government and $10,400,000 to state Medicaid programs. On December 16, 1992 defendant Draper resigned from NHL's board of directors and as president and chief executive officer.

## II. THE PROCEDURAL POSTURE BEFORE THE COURT OF CHANCERY

On December 21, 1992, at 8 a.m. (EST), the next business day after NHL announced the settlement, plaintiffs filed the Delaware derivative suits. Later that day three more derivative suits were filed by

---

2. Moreover, this is not a case where counsel representing the corporation chooses to take over the litigation and to assert in Delaware the corporation's alleged claims against the individual defendants. Counsel for the corporation has joined in the individual defendants' position in all respects.

plaintiffs' lead counsel [3] in San Diego, California, Superior Court. About ten days later plaintiffs' counsel filed three more derivative actions in the California state courts. These complaints are all filed by the same lead counsel. They are virtually identical with each other and with the Delaware complaints, but the named plaintiffs in the Delaware actions differ from those in the California actions.

The California state court actions and the Delaware actions allege that defendants breached their fiduciary duties to the corporation and the stockholders in connection with the management and supervision of the billing practices of NHL, allegedly concealed from stockholders the true facts concerning the company's billing practices, allegedly defrauded the stockholders by numerous omissions and misrepresentations, and unjustly enriched themselves at the expense of NHL and its stockholders. All complaints allege that demand on the directors was excused.

After the Delaware actions and the California state court actions were filed, plaintiffs' lead counsel also filed a derivative action in the United States District Court for the Southern District of California alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") statute based upon the same events giving rise to the Delaware actions and the California state court litigation. Plaintiffs' lead counsel then filed several class actions, also in federal court in California alleging among other things violations of the Federal Securities Laws.

The RICO derivative action and the federal class actions have been assigned to a single judge. Five defendants answered the RICO action. On March 10, 1993, defendants' motion to stay the RICO action was denied. Plaintiffs thereafter filed an amended complaint.

In the federal class actions plaintiffs filed their consolidated amended complaint on March 3, 1993, and defendants filed a motion to dismiss the same on April 12, 1993. That motion is scheduled to be heard June 14, 1993. The California state court derivative actions were assigned to a single judge, and defendants in those actions filed motions to stay on February 3, 1993. The day following the Vice Chancellor's letter opinion of April 8, 1993, dismissing the Delaware actions, the California state court denied defendants' motion to stay the California actions. Discovery proceedings in both California and Delaware have just commenced and are in the very incipient stages.

Defendants' motion for summary judgment in the Delaware cases centers around the sufficiency, under Delaware substantive corporation law and Chancery Rule 23.1, of plaintiffs' allegation that demand upon the directors was excused. In the California state court litigation, the issue of pre-suit demand is also before the court. According to defendants, plaintiffs' counsel has taken the position in the California litigation that the question of pre-suit demand is a "procedural issue" governed solely by Section 800 of the California Corporations Code, and not by Delaware substantive corporation law. Defendants claim that plaintiffs are taking the position in California that Section 800 creates standards different from those applicable under Delaware substantive law and under Chancery Rule 23.1. Defendants assert that plaintiffs' position is "consistent with plaintiffs' counsel's strong, publicly expressed views that California law governing fiduciary obligations is significantly different from, and qualitatively superior to, Delaware law, and is binding on Delaware corporations that are sued in California." [4]

---

3. Plaintiffs' lead counsel in all the cases is the San Diego office of the firm of Milberg, Weiss, Bershad, Spectrie & Lerach.

4. Defendants' Opening Brief at 11. In support of this contention defendants cite to, and include in their appendix (A492–585), a paper prepared in August 1991 by plaintiffs' lead counsel, William S. Lerach, Esquire, for the National

Conference of State Legislatures Annual Meeting in Orlando Florida. The paper (the "Lerach paper") is entitled, "The Incorporation Trap: How Delaware has Destroyed Corporate Governance." The Lerach paper, which is highly critical of the Delaware courts, is not relevant in deciding this appeal, which is based solely on the narrow issue of whether or not the Vice Chancellor abused his discretion or committed

As a result of certain telephone discussions between plaintiffs' Delaware counsel and defendants' Delaware counsel on or about January 8, 1993, the parties entered into a stipulation in the Delaware Court of Chancery extending time to move or answer in the Delaware action until January 28, 1993. Nevertheless, defendants answered on January 15, 1993, and filed a motion for summary judgment on January 19, 1993.

In filing their answers on January 15, 1993, defendants thereby submitted themselves to personal jurisdiction in the Delaware actions.[5] By their motion for summary judgment in the Delaware actions, filed together with an opening brief, defendants seek dismissal of the Delaware actions on the demand issue and on the further issue that NHL's certificate of incorporation, adopted pursuant to 8 *Del.C.* § 102(b)(7), is a bar to at least part of the complaint.

On January 26, 1993, the Delaware plaintiffs filed motions to dismiss or stay the Delaware actions under Chancery Rule 41(a)(2). On February 3, 1993, certain of the California defendants moved to stay the cases pending in California Superior Court. The Court of Chancery granted the Delaware plaintiffs' motion to dismiss on April 8, 1993. One day later the defendants' motion to stay the California state cases was denied by the California Superior Court.

## III. THE DISMISSAL BY THE VICE CHANCELLOR WAS NOT AN ABUSE OF DISCRETION

■ There is no dispute that Chancery Rule 41(a)(2) is applicable. That Rule provides:

(2) **By Order of Court.** Except as provided in paragraph (1) of this subdivision of this Rule, an action shall not be dismissed at the plaintiff's instance save upon order of the Court and upon such terms and conditions as the Court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon him of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the Court. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

If no answer or motion for summary judgment had been filed, plaintiffs could have dismissed this action unilaterally, without prejudice, simply by filing a notice of dismissal under Rule 41(a)(1). The Rule is clear, however, that once an answer or motion for summary judgment is filed, Rule 41(a)(2), not Rule 41(a)(1), applies. The Court must then decide whether or not to permit the voluntary dismissal, and, if so, on what terms.

■ The decision by the Vice Chancellor to grant plaintiffs' motion to dismiss under Chancery Rule 41(a)(2) fell within his discretion, and is reviewable on an abuse of discretion standard of review. The Court of Chancery properly undertook to determine whether or not there would be any "plain legal prejudice" to the defendants in the event of a voluntary dismissal. He found no such prejudice, and we do not find that he abused his discretion.

■ It is appropriate to look to various factors to determine whether a defendant would suffer "plain legal prejudice" as a

legal error. Defendants' claims regarding plaintiffs' assertions in California and the Lerach paper, at best, refer only to the most extreme position which plaintiffs' lead counsel *may* take in the California litigation. They are not probative of the issue of what position the California courts have taken or will take on the underlying legal issues (including choice of law, the internal affairs doctrine, full faith and credit, due process, and substantive corporation law) where corporate governance matters involving corporations formed under the laws of the State of Delaware are before the California courts. Ac-

cordingly, the opinions of plaintiffs' lead counsel (as erroneous as they may be) concerning Delaware courts or Delaware law or whether California courts should disregard Delaware law are of no moment for purposes of the issue presently before us in this matter.

5. It is not clear whether all the individual defendants will be before the California courts and the federal courts for all purposes, but we do not regard this issue as determinative.

result of such a voluntary dismissal. Those factors include: (1) the defendants' effort and expense in preparation for trial; (2) excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action; (3) insufficient explanation for the need to take a dismissal; and (4) the fact that a motion for summary judgment has been filed by the defendant. *See Pace v. Southern Express Co.*, 409 F.2d 331, 334 (7th Cir.1969); *United States v. Outboard Marine Corp.*, 789 F.2d 497, 502–07 (7th Cir.1986); *Kovalic v. DEC Int'l, Inc.*, 855 F.2d 471, 473–74 (7th Cir.1988).

■■■ In this case, there has been very little effort and expense expended by the defendants in preparation for trial. The case is relatively new, defendants filed answers, motions for summary judgment and a brief in support thereof, and began some routine discovery. Much of this activity was commenced after the plaintiffs had indicated that they intended to seek a voluntary dismissal. Hence, these efforts by the defendants cannot be boot-strapped to count significantly in their favor. It can hardly be found that there was any excessive delay or lack of diligence on the part of the plaintiffs in prosecuting these ac-

tions. Plaintiffs do have an explanation for the need to take a dismissal, namely to proceed in California where other actions are pending and where other circumstances (e.g., witnesses) point to California as a convenient forum.[6] Finally, the fact that a motion for summary judgment has been filed by the defendants is not determinative. It had the effect as a matter of law of moving the case from Rule 41(a)(1) to Rule 41(a)(2), but it is of no other consequence in evaluating the scale of "legal prejudice" in this action, except in evaluating whether or not the substance of the motion raises or presents issues which may be relevant to the question of whether or not defendants will suffer plain legal prejudice in the event of a dismissal.[7]

■■■ Defendants' principal claim of prejudice is that it is a virtual certainty that the California courts will apply California law, not Delaware law, to the demand issue, and perhaps to the merits of this case. The California courts will have to apply appropriate choice of law principles in accordance with the laws of that jurisdiction and the United States Constitution.[8] Under the internal affairs doctrine, the law of the state of incorporation (Delaware) would ap-

6. Although we do not regard this strictly as a *forum non conveniens* case, we recognize plaintiffs' contention that California is in essence a "center of gravity" for the factual part of the case. For purposes of this appeal, that issue is not determinative, but it is a rational factor which, in combination with other factors, supports the Vice Chancellor's exercise of his discretion.

7. Plaintiffs complain that defendants took advantage of a disclosure made by plaintiffs' counsel to defendants' counsel in a telephone conversation on or about January 8 that plaintiffs intended to proceed in California and dismiss voluntarily the Delaware actions. Without further notice to plaintiffs, defendants one week later filed their answers and then four days thereafter filed a motion for summary judgment. Plaintiffs complain about this as a "ploy" (see Plaintiffs' Answering Brief at 9–10) and the Vice Chancellor observed that the motions for summary judgment "were interposed merely as a regrettable attempt to show a basis for asserting prejudice where no actual prejudice existed." Slip op. at 6. We attribute no improper motives to defendants in filing the answers and motions for summary judgment in this case. Moving the case from Rule 41(a)(1) to Rule

41(a)(2) by those filings is simply a legitimate tactic that was available to the defendants. *See Lunn v. United Aircraft Corporation*, 26 F.R.D. 12, 15 (D.Del.1960). The existence of a motion for summary judgment is only one of several factors to be considered under Rule 41(a)(2) in determining whether or not dismissal will result in prejudice, and in our view the existence of the motion for summary judgment is an insignificant factor in this case. The key question here is whether or not the defendants will suffer plain legal prejudice if the courts of California, not the courts of Delaware, determine the issues raised in the motion for summary judgment and other legal issues in the case.

8. U.S. Const. art. IV, § 1: "Full Faith and Credit shall be given in each State to the public Acts, Records and judicial Proceedings of every other State...." *See also*, The Commerce Clause (*Id.* art. I, § 8) and the Due Process Clause (*Id.* amend. XIV § 1). We need not decide whether it would be impermissible as a matter of federal constitutional law for the California state courts to apply California law and refuse to recognize the internal affairs doctrine.

ply to matters of substantive law [9] raised in the Delaware and California state court proceedings.

It has long been settled doctrine that a court—state or federal—sitting in one state will, as a general rule, decline to interfere with, or control by injunction or otherwise, the management of the internal affairs of a corporation organized under the laws of another state but will leave controversies as to such matters to the courts of the state of the domicile.

*Rogers v. Guaranty Trust Co. of New York,* 288 U.S. 123, 130, 53 S.Ct. 295, 297, 77 L.Ed. 652 (1933); *McDermott Inc. v. Lewis,* Del.Supr., 531 A.2d 206, 215 (1987). *See also Kamen v. Kemper Financial Services, Inc.,* —— U.S. ——, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991); *Koster v. (American) Lumbermens Mutual Casualty Co.,* 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947); *CTS Corp. v. Dynamics Corp. of America,* 481 U.S. 69, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987); *Delaware v. New York,* —— U.S. ——, 113 S.Ct. 1550, 123 L.Ed.2d 211 (1993); *First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba,* 462 U.S. 611, 620–22, 103 S.Ct. 2591, 2597, 77 L.Ed.2d 46 (1983).

As we said in *McDermott:*

Internal corporate affairs involve those matters which are peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders. It is essential to distinguish between acts which can be performed by both corporations and individuals, and those activities which are peculiar to the corporate entity.

Corporations and individuals alike enter into contracts, commit torts, and deal in personal and real property. Choice of law decisions relating to such corporate activities are usually determined after consideration of the facts of each trans-

action. In such cases, the choice of law determination often turns on whether the corporation had sufficient contacts with the forum state, in relation to the act or transaction in question, to satisfy the constitutional requirements of due process. The internal affairs doctrine has no applicability in these situations. Rather, this doctrine governs the choice of law determinations involving matters *peculiar* to corporations, that is, those activities concerning the relationships *inter se* of the corporation, its directors, officers and shareholders.

The internal affairs doctrine requires that the law of the state of incorporation should determine issues relating to internal corporate affairs. Under Delaware conflict of laws principles and the United States Constitution, there are appropriate circumstances which mandate application of this doctrine.

. . . .

The traditional conflicts rule developed by courts has been that internal corporate relationships are governed by the laws of the forum of incorporation. . . .

. . . .

Given the significance of these considerations, application of the internal affairs doctrine is not merely a principle of conflicts law. It is also one of serious constitutional proportions—under due process, the commerce clause and the full faith and credit clause—so that the law of one state governs the relationships of a corporation to its stockholders, directors and officers in matters of internal corporate governance. The alternatives present almost intolerable consequences to the corporate enterprise and its managers. With the existence of multistate and multinational organizations, directors and officers have a sig-

---

**9.** The issue of whether or not demand is required or excused is a matter of substantive Delaware corporation law. *Levine v. Smith,* Del.Supr., 591 A.2d 194, 207 (1991) (demand requirement is not a mere formality of litigation, but rather an important stricture of substantive law); *Tandycrafts, Inc. v. Initio Partners,* Del.Supr., 562 A.2d 1162, 1166 (1989) (demand requirement is a stricture of substantive

law); *Allison v. General Motors,* 604 F.Supp. 1106, 1115 (D.Del.1985), (demand requirement is a rule of substantive right), *aff'd,* 782 F.2d 1026 (3d Cir.1985); *Kamen v. Kemper Financial Services, Inc.,* —— U.S. ——, ——, 111 S.Ct. 1711, 1716–17, 114 L.Ed.2d 152, 164 (1991) (the demand doctrine is a matter of substance, not procedure). *See also Aronson v. Lewis,* Del. Supr., 473 A.2d 805 (1984).

nificant right, under the fourteenth amendment's due process clause, to know what law will be applied to their actions. Stockholders also have a right to know by what standards of accountability they may hold those managing the corporation's business and affairs....

. . . .

Thus, we conclude that application of the internal affairs doctrine is mandated by constitutional principles, except in "the rarest situations."

. . . .

.... [W]e believe that full faith and credit commands application of the internal affairs doctrine except in the *rare* circumstance where national policy is outweighed by a significant interest of the forum state in the corporation and its shareholders.

.... Due process requires that directors, officers and shareholders be given adequate notice of the jurisdiction whose laws will ultimately govern the corporation's internal affairs.

531 A.2d at 214–18 (citations and footnotes omitted; emphasis in original).

In *Kamen*, the United States Supreme Court in 1991 reversed a federal court of appeals decision which had adopted a universal demand rule in a stockholder's derivative suit under the Investment Company Act of 1940 ("ICA"). The Supreme Court held that it was the law of the state of incorporation which governed the substantive legal issues of corporate governance, including the question of pre-suit demand. The Court said:

In our view, the function of the demand doctrine in delimiting the respective powers of the individual shareholder and of the directors to control corporate litigation clearly is a matter of "substance," not "procedure."

. . . .

Because the contours of the demand requirement—when it is required, and when excused—determine *who* has the power to control corporate litigation, we have little trouble concluding that this aspect of state law relates to the allocation of governing powers within the corporation. The purpose of requiring a precomplaint demand is to protect the directors' prerogative to take over the litigation or to oppose it....

. . . .

.... The scope of the demand requirement under state law clearly regulates the allocation of corporate governing powers between the directors and individual shareholders. Because a futility exception to demand does not impede the regulatory objectives of the ICA, a court that is entertaining a derivative action under that statute must apply the demand futility exception as it is defined by the law of the State of incorporation....

— U.S. at ——, ——, —— – ——, 111 S.Ct. at 1716, 1719, 1722–23. We know of no case in California jurisprudence which has considered *Kamen*. In *Kamen*, the Court relied almost exclusively upon Delaware's analysis of the demand rule as a substantive principle of law, even though it had a Maryland corporation before it, *citing, e.g.*, *Spiegel v. Buntrock*, Del.Supr., 571 A.2d 767 (1990); *Aronson v. Lewis*, Del.Supr., 473 A.2d 805 (1984); and *Zapata Corp. v. Maldonado*, Del.Supr., 430 A.2d 779 (1981). Therefore, we cannot accept the argument advanced by defendants that California would reject the internal affairs doctrine and the Delaware demand rule in the face of *Kamen* and other authorities.

Defendants contend that plaintiffs' counsel has taken a very strong position that Delaware law should not apply in a case like this where the major contacts are with the State of California, including the fact that California is the principal place of business of the corporate defendant, NHL. If this is to be the contention of plaintiffs in the California courts, it flies in the face of the internal affairs doctrine. Based upon defendants' contentions concerning plaintiffs' assertions in California and certain California authorities,[10] defendants

10. The California cases do not reveal a clear doctrine, as defendants assert, that California will, in a case like the instant case, ignore the internal affairs doctrine and apply California

contend there is a significant risk (indeed a virtual certainty) that plaintiffs will be able to persuade the California courts that California law, and not Delaware law, controls. For example, defendants contend that it is plaintiffs' view that the issue of presuit demand is "procedural" and that California's Section 800 would apply. Defendants' contend that this provision is not necessarily identical with Delaware law.[11] As to the issue of the merits of defendants' fiduciary duties, California Corporation Code, Section 2116 provides, in pertinent part, as follows:

> The directors of a foreign corporation ... are liable ... [for] ... violation of official duty according to any applicable laws of the state or place of incorporation.... Such liability may be enforced in the courts of this state.

Under Section 2116, it would appear that California courts would apply Delaware law.

In this Court plaintiffs state that: (1) "California *may* [or *might*] apply Delaware law to the substantive issues raised in the case" (Appellees' Brief at 20) (emphasis supplied); and (2) "the pre-suit demand re-

quirement of § 800 *likely will require* the California state court to apply Delaware pre-suit demand rules." (*Id.* at 22) (emphasis supplied). Defendants claim, in effect, that plaintiffs' wording is ambiguous, disingenuous, and is inconsistent with that which plaintiffs have asserted and will assert in California (Appellants' Reply Brief at 6–8). Indeed, at oral argument, plaintiffs' Delaware counsel refused to state whether or not plaintiffs would take the position in California that Delaware law applies. Assuming *arguendo* that defendants are correct, and that plaintiffs will argue in California that the courts of that state "may not" or "should not" apply Delaware law, it does not follow that the California courts *will not* apply Delaware law, given the vitality and constitutional underpinnings of the internal affairs doctrine.

We cannot presume that the California courts will not apply Delaware law where Delaware law, as here, clearly is applicable. We likewise presume that defendants will assert in the California courts that Delaware law applies to the demand issue as

law, not Delaware law. *See Western Air Lines, Inc. v. Sobieski,* 191 Cal.App.2d 399, 12 Cal.Rptr. 719 (1961) (upholding California Commissioner of Corporations order directing Delaware corporation with major California contacts to apply cumulative voting requirement imposed by California law). *See also Wilson v. Louisiana–Pacific Resources, Inc.,* 138 Cal.App.3d 216, 187 Cal. Rptr. 852, 858 (1982) (affirming a decision of the Superior Court imposing California's cumulative voting law on a Utah corporation); *Nedlloyd Lines B.V. v. Superior Ct.,* 3 Cal.4th 459, 11 Cal.Rptr.2d 330, 351, 834 P.2d 1148, 1169 (1992) (choice-of-law clause requiring that contract be "governed by" law of Hong Kong was fully enforceable and applicable to claims for breach of implied covenant of good faith and fair dealing and for breach of fiduciary duties allegedly arising out of contract); *Gaillard v. Natomas Co.,* 173 Cal.App.3d 410, 219 Cal.Rptr. 74 (1985) (shareholder who meets contemporaneous ownership requirement for shareholder derivative action has standing to proceed with the complaint). Although *Western Air Lines* was the subject of numerous law review articles that warned the case signalled the start of a "conflicts revolution," the internal affairs doctrine has endured the test of time. No more than two non-California state courts have cited to the *Western Air Lines* case and none of the states, including California, appear to have rejected the internal affairs doctrine. *See McDermott,* 531 A.2d at 215–16. When this Court considered

this issue six years ago in *McDermott,* it concluded that "[t]he umbilical tie of the foreign corporation to the state of its charter is still religiously regarded as conclusive in determining the law to be applied to in intracorporate disputes." *Id.* The statement remains valid today as little has changed in this area of American jurisprudence since *McDermott* was decided, except that *Kamen* and other Supreme Court cases support the underpinning of the internal affairs doctrine.

11. Section 800 states, in pertinent part:

> (b) No action may be instituted or maintained in the right of any domestic or foreign corporation by any holder of shares or of voting trust certificates of the corporation unless both of the following conditions exist:
>
> \*   \*   \*
>
> (2) The plaintiff alleges in the complaint with particularity plaintiff's efforts to secure from the board such action as plaintiff desires, or the reasons for not making such effort, and alleges further that plaintiff has either informed the corporation or the board in writing of the ultimate facts of each cause of action against each defendant or delivered to the corporation or the board a true copy of the complaint which plaintiff proposes to file.

California Corporations Code § 800.

well as the merits, and that the California courts are required to recognize the internal affairs doctrine. It seems anomalous for defendants to be telling us that it is certain they will lose on these issues in California, even before the matters have been presented to the California courts. We see no reason why the California courts will not, and cannot, apply and interpret Delaware law.[12]

Defendants rely on *Kennedy v. State Farm Mut. Auto Ins. Co.*, 46 F.R.D. 12, 15 (E.D.Ark.1969) and *Rodriguez v. Marks Bros. Pickle Co.*, 102 F.R.D. 104, 107–08 (E.D.Wis.1984). In those actions, the district courts found legal prejudice and refused to grant a voluntary dismissal under Fed.R.Civ.P. 41(a)(2), which is identical with Chancery Rule 41(a)(2). In *Kennedy* it was found that plaintiff was seeking to avoid a defense which was available in the forum where plaintiff originally brought the action.[13] *Rodriguez* was a similar forum-shopping case which the district court judge found to be a "blatant misuse of the non-suit device prescribed by Rule 41(a)(2)." 102 F.R.D. at 107. Defendants also rely on *Husband (B.E.M.) v. Wife (D.A.M.)*, Del.Supr., 428 A.2d 1148 (1981), where this Court affirmed Family Court's denial of a Rule 41(a)(2) motion because different legal standards might apply if the motion had been granted because of a change in the statute. These cases are not helpful here. They involve decisions of trial courts exercising their discretion *not to grant* a dismissal. Here, we are reviewing, on an abuse of discretion standard, the trial court's decision *to grant* a dismissal.

In *Signal*,[14] this Court refused to review a discretionary ruling by the Court of Chancery where similar issues were raised by defendants. There, we said:

(6) The individual defendants contend the Court erred because: (a) the Delaware suit was filed before the California suit; (b) the Court has approved "forum shopping"; and (c) Delaware courts should determine Delaware questions of law and not defer to foreign jurisdictions.

(7) The grant or denial of a motion to dismiss without prejudice under Rule 41(a)(2) is a discretionary matter. The claimed prejudice to the individual defendants of not being permitted to litigate in Delaware the question of plaintiffs' standing to continue the derivative suits was thoughtfully analyzed by the Vice Chancellor. We cannot conclude that the Court abused its discretion in exercising its conferred authority to dismiss under Rule 41(a)(2). *Cf. Armstrong v. Pomerance*, Del.Supr., 423 A.2d 174 (1980).

Here, the sole issue is whether the Vice Chancellor abused his discretion in finding no legal prejudice in the risk that California will not apply Delaware law. To be sure, that risk is present, but defendants have not shown the risk to be of a magnitude which approaches a virtual certainty. It is preferable, in the abstract, that the courts of the state of incorporation be the forum to litigate a case which involves the application and interpretation of the internal corporation law of that state. *Rogers*, 288 U.S. at 127–30, 53 S.Ct. at 297. It does not follow, however, that the courts of Delaware are the only courts which may

---

**12.** In the event that there is a dispute about the interpretation of Delaware law, there is a remedy available which could be exercised in the Supreme Court of California or in the federal courts. Under a recent amendment to Article IV, section 9, of the Delaware Constitution adopted in January of this year, the Delaware Supreme Court now has jurisdiction to hear and determine questions of law certified to it by any Article III federal court or the highest appellate court of any other state where it appears to the Delaware Supreme Court "that there are important and urgent reasons for an immediate determination of such questions by it." The Delaware Supreme Court has adopted a new Supreme Court Rule 41(b)(ii) to facilitate such a certification. The issue of whether or not certi-

fication is appropriate is discretionary both with the certifying court and with the Delaware Supreme Court.

**13.** The same district court judge who decided *Kennedy* distinguished that case in dismissing an action two years later where the court found that there was no danger the other forum would misapply the law and no basis to presume that plaintiff would not obtain a fair trial in the other forum. *Stevenson v. Missouri Pac. R.R.*, 53 F.R.D. 184, 186 (E.D.Ark.1971).

**14.** *Rand v. The Signal Companies Inc.*, Del. Supr., No. 366, 1985, 502 A.2d 979, (Table) Horsey, J. (Dec. 3, 1985) (Order).

adjudicate questions of Delaware corporation law. It would be a jurisprudence of arrogance for this court to hold that it is impermissible for a trial court of this state to allow a court of a sister state to proceed with litigation involving the internal affairs of a Delaware corporation even where there is a risk (though not a virtual certainty) that the sister state will reject the internal affairs doctrine. Defendants imply that it is naive for us not to recognize the virtual certainty that California will reject the internal affairs doctrine and apply California law to the pre-suit demand issue and the fiduciary duty issues on the merits. We disagree. We must accord a sister state the presumption of appropriate and constitutional conflict of laws principles in this situation. Defendants' argument which raises the specter of California courts refusing to apply Delaware law is purely speculative and does not constitute plain legal prejudice.

## CONCLUSION

We find that the Vice Chancellor committed no error of law and applied the correct legal standards. We likewise hold that the Vice Chancellor did not abuse his discretion in permitting plaintiffs voluntarily to dismiss the Delaware derivative actions and to proceed with the simultaneously filed actions[15] in California. In the interest of judicial economy there should not be several different actions proceeding contemporaneously in different courts arising out of the same occurrences. The Vice Chancellor correctly determined that judicial economy requires that litigation be centered in one forum, to the extent possible. His finding that there was no plain legal prejudice to defendants in dismissing the Delaware actions was not an abuse of discretion. The order of the Vice Chancellor is

**AFFIRMED.**

15. Defendants contend that the Delaware actions were "first filed" because they were filed at 8 a.m. (EST) on December 12, 1992, and the California actions were filed later that day. (Defendants' Brief at 9). The three-hour time change alone is sufficient reason to conclude that, for purposes of this case, the Delaware actions filed on December 12, 1992, and those filed in California that same day, are to be treated as simultaneously filed actions.