**28**

**In re the Matter of DIVISION OF FAMILY SERVICES, Petitioner,**

**v.**

**K.B.[1], and H.S., Respondents.**

**File Nos. CS08–03931, 12–04–11TS. Petition Nos. 08–40441, 12–14751.**

Family Court of Delaware, Sussex County.

Submitted: Feb. 7, 2013.
Decided: March 7, 2013.

1. Pseudonyms have been used for the names of the parties, the minor children, and other persons involved as needed to protect identity pursuant to Delaware Supreme Court Rule 7(d).

John A. Eberly, Esquire, Department of Justice, Georgetown, Delaware for Petitioner Division of Family Services.

Mark H. Hudson, Esquire, Haller & Hudson, Georgetown, Delaware for Respondent K.B.

Leslie C. DiPietro, Esquire, Sergovic, Carmean & Weidman, P.A., Georgetown, Delaware for Court–Appointed Special Advocate.

David C. Hutt, Esquire, Morris, James, Wilson, Halbrook & Bayard, L.L.P., Georgetown, Delaware for children E.B. and J.B.

**MOTION TO DISMISS PETITION FOR TERMINATION OF PARENTAL RIGHTS, AND TO REOPEN ORDER OF MARCH 30, 2012 AND APPROVE ALTERNATE PERMANENCY GOAL**

*In the Interests Of: E.B. & J.B.*

JONES, Judge:

### OPINION

On February 7, 2013, the Court held a hearing with respect to a Motion filed by

the Division of Family Services ("DFS"), entitled Motion to Dismiss Petition for Termination of Parental Rights and to Reopen Order of March 30, 2012, and Approve Alternate Permanency Goal. The Motion relates to a Petition for Termination and Transfer of Parental Rights filed by DFS against K.B. ("mother") and H.S. ("father") on April 27, 2012. Through this Petition, DFS was seeking termination of parental rights over mother and father's interests in the minor children E.B. and J.B.

In its Motion to Dismiss Petition for Termination of Parental Rights and to Reopen Order of March 30, 2012, and Approve Alternate Permanency Goal, DFS is seeking for this Court to allow DFS to voluntary dismiss the Petition for Termination of Parental Rights filed by DFS on April 27, 2012. DFS asks the Court to approve a permanency goal of Another Permanent Planned Living Arrangement ("APPLA") instead of the permanency goal of termination of parental rights for purposes of adoption ("TPR") that the Court ordered through its March 30, 2012 Order. To support its Motion, DFS notes that both children have expressed strong wishes in opposition to adoption. Mother filed a Response in support of this Motion.

The CASA filed a Response to DFS' Motion, asking the Court to deny the Motion. CASA argues that TPR is in the children's best interest. Further, CASA argues that the Court had already considered the wishes of the children in coming to its March 30, 2012 decision to change the permanency goal to TPR. Additionally, CASA argues that nothing has significantly changed since that decision which would justify changing the goal from TPR to APPLA.

*History of This Matter*

This matter has an extensive history in this Court. E.B. and J.B. were placed in the care of the State of Delaware on December 16, 2008, through an award of emergency custody. In its 2008 filing, DFS alleged that mother was either unable or unwilling to provide necessary care for the children, and that father was also unable to care for them. DFS alleged that mother had a history of substance abuse, her current whereabouts were unknown, and that she had dropped off her daughter with mother's sister, who could not obtain medicine or counseling for the child because she was not her legal guardian.[2]

Through a series of hearings which began in late 2008 and extended through 2009, 2010 and 2011, the Court determined that E.B. and J.B. were dependent in the care of their parents. Mother and father were provided with case plans for reunification, and were appointed legal counsel. The Court reviewed mother and father's progress under their case plans, as well as how the children were doing in foster care. Ultimately, by Order of this Court dated March 30, 2012, the Court determined that the appropriate permanency goal for E.B. and J.B. was TPR. The Court directed DFS to file its Petition for Termination and Transfer of Parental Rights within thirty days.

On April 27, 2012, DFS filed its Petition for Termination and Transfer of Parental Rights, requesting that the parental rights of mother and father over E.B. and J.B. be terminated. The TPR ground alleged against mother was failure to plan. The TPR grounds alleged against father were failure to plan and abandonment.

A TPR hearing was scheduled for October 25, 2012. Prior to that date, DFS requested that the Court appoint an attor-

2. The daughter is not the subject of the cur- rent proceeding.

ney, pursuant to the decision of *In re Frazer,* 721 A.2d 920 (Del.1998), to advocate the expressed wishes of E.B. and J.B. Apparently, both children had expressed a strong desire not to be adopted. The Court granted the motion and appointed counsel to represent the wishes of the minor children. The termination hearing was rescheduled for February 7, 2013. Prior to that date, though, DFS filed the pending Motion, and the Court chose to address the Motion on February 7, 2013 rather than proceed to a full hearing on the issue of termination of parental rights. Mother was present at this hearing with counsel. Father did not appear at the hearing.

### February 7, 2013 Hearing

At the February 7, 2013 hearing, the Court heard testimony from Kim Sabanayagam, E.B. and J.B.'s adoption caseworker ("Ms Sabanayagam"), Karen Irvin, J.B.'s therapist ("Ms. Irvin"), Catrina Hinds, E.B.'s counselor ("Ms. Hinds"), E.P., E.B. and J.B.'s foster father ("Mr. P"), Julie Schirmer, E.B. and J.B.'s DFS Family Crisis Therapist ("Ms. Schirmer"), and Sharon Gambil, the CASA ("CASA"). Some common themes that developed throughout the testimony of each witness were that E.B. and J.B. strongly wished not to be adopted, and that it would not be in the best interests of E.B. and J.B. to have their contact with mother severed. Additionally, E.B. and J.B.'s wishes are to first live with their mother, but if that cannot happen, to stay with Mr. P and his wife.

E.B. and J.B. are currently placed in the home of Mr. P and his wife. The children were first placed there in February 2009, before they were moved to another placement; however, due to difficulties in the boys' behavior, the latter placement did not work out. J.B. was placed back in Mr. P's home in June 2012, and E.B. returned to Mr. P's home in August 2012. Although Mr. P and his wife are not an adoptive resource for the children, Mr. P testified that he would be willing to care for the boys until they age out of foster care. Further, Mr. P noted that his other foster children have always been able to rely on his family as a resource, even after the children turn 18 years old. Mr. P testified that he loves the boys, and the testimony throughout the hearing established that Mr. P has a strong bond with E.B. and J.B.

Mr. P also testified that he started initiating contact between mother and E.B. and J.B. in August 2012. He stated that there was a bit of an issue with the first visit, where he took the boys to mother's home but mother was asleep. He said that the boys were very disappointed; however they returned an hour later to mother's home for a visit. Since that first visit, the boys have been having consistent visitation with mother nearly every weekend. Mother has two daughters who are currently living with her, and Mr. P testified that the older daughter is home during some visits, and the younger daughter is present at all the visits. Mr. P noted that there is a strong bond between J.B. and the younger daughter. Mr. P testified that he attends all the visits between mother and the boys, with the exception of an unsupervised visitation session between the boys and mother this past Christmas. Additionally, Mr. P and his wife had a birthday party for E.B. at their home, which mother, the sisters and CASA attended. Mr. P noted that at the beginning of each visit with mother, the children must tell mother about their behavior for the past week. He believes that this reinforces good behavior with J.B. and E.B., as they really care about their mother's opinion.

J.B. and E.B. do tend to have some behavioral issues, which have resulted in the boys' ending up in crisis on a few separate occasions. J.B. is currently in day treatment with Ms. Irvin, who has worked with J.B. since August 2012. Ms. Irvin testified that she sees J.B. every week to every other week, and works with him on stabilizing his behaviors, in particular his aggressive behaviors and anger outbursts. Ms. Irvin noted that J.B. had been placed in crisis for a few days in September 2012 in Lewes, and then again for a few days in the beginning of October 2012 at Rockford Center in New Castle County. However, Ms. Irvin said that she has noticed an improvement in J.B., and believes that part of this improvement is because J.B. is now having consistent contact with mother. Ms. Irvin testified that J.B. will likely be reintegrating back into public school within the next few weeks. In Ms. Irvin's opinion, it would be very difficult for contact between mother and J.B. to be completely cut off. Additionally, Ms. Irvin testified that J.B. had indicated to her that he would "not listen to anyone again" if he was not allowed to see mother anymore. Mr. P also testified to a similar statement J.B. made to Mr. P, indicating that if the State thinks J.B.'s behavior is bad now, "they will see" what bad behavior is if they attempt to pursue adoption of J.B.

Ms. Hinds has been working as E.B.'s counselor since January 2012. Ms. Hinds reported that E.B. had also been admitted to crisis for a few days in October 2012. She testified that she feels it is important for E.B. to see his mother and maintain a relationship with his mother and sisters. Further, Ms. Hinds stated that she believes it would have a negative impact on E.B. for his relationship with mother to be severed.

Ms. Schirmer, who has been involved with the case since September 2010, testified in support of DFS' Motion. Ms. Schirmer noted that prior to Mr. P instituting visitation between mother and the boys, DFS took the children to monthly visits with mother. She, too, reiterated the fact that the children feel very strongly opposed to adoption. She testified to the boys' strong bond with their mother and sisters, and also reechoed the fact that J.B. had indicated to her that he would behave badly if the State were to pursue adoption. Ms. Schirmer stated that in her opinion, the boys would experience one crisis after another if the parental rights of mother were terminated.

Ms. Schirmer was questioned as to why DFS now felt that APPLA was an appropriate permanency goal for the children, when throughout the hearings that resulted in the Court's March 30, 2012 Order, DFS advocated for a goal of TPR. First, Ms. Schirmer testified that mother has made significant improvements since the hearings leading up to the March 30, 2012 Order, including seeking treatment with Brandywine Counseling, finding employment, and providing adequate care for her youngest daughter. Additionally, Ms. Schirmer stated that the boys are now older and have been more strongly articulating their preferences against adoption. Further, Ms. Schirmer noted the strong bond between the boys and mother that has become evident through the weekly visitation sessions which have occurred since August 2012. Finally, Ms. Schirmer stated that the boys have formed a strong bond with Mr. P and his wife, and that Mr. P and his wife have agreed to be a long-term placement for the boys. Ms. Schirmer stated that she believes under the unique factual circumstances present in this case, APPLA is a more appropriate permanency goal for E.B. and J.B. than TPR.

CASA testified in opposition to DFS' Motion. CASA has been involved with this case since January 2012, and visits J.B. and E.B. once a month at Mr. P's home. CASA testified that the only interaction she has even seen between the boys and their mother and sisters was on one occasion at E.B.'s birthday party. CASA stated that in her opinion, TPR is appropriate in this case. She testified that she believes the children would be in "emotional limbo", waiting for mother to come get them, if they were to continue to be in foster care, and that she believes that long-term foster care is not an appropriate goal. Ms. Sabanayagam also testified that she does not believe it is in the best interest of the children for them to remain in the foster care system on a long-term basis. She testified that in her opinion, TPR is in the best interest of the children. She did state, however, that it would be important for the children to be adopted by a family that was open to keeping contact with mother and sisters, as there is a strong bond between the boys and their mother and sisters.

In closing, DFS argued that it should be permitted to dismiss the Petition for TPR, as TPR is no longer in the best interest of the children, and that APPLA is the appropriate permanency goal in this case. In support of these arguments, DFS stated that since the March 30, 2012 Order, the children have begun to have consistent visitation with mother and are strongly bonded with her, and the children have become bonded with Mr. P and his wife, who are willing to serve as a long-term placement for them. Additionally, the boys' behavior issues are continuing to improve. Further, DFS argued that if this case were to proceed to a TPR hearing, DFS does not believe it would be able to prove that TPR is in the best interest of the children due to the children's overwhelming preference against adoption.

Mother's attorney stated that Mother supports DFS' Motion to Dismiss the Petition for TPR, and reiterated the argument that the Court would likely be unable to find at a TPR hearing that TPR is in the best interest of the children under the best interest factors set forth in Title 13, Section 722, due to the children's strong wishes in opposition to adoption.

The children's attorney stated that the children support the Motion to Dismiss the Petition for TPR. The children's attorney argued that there are five differences in the circumstances of this case from time when the Court issued the March 30, 2012 Order until now: (1) E.B. was much less committed about his preference against adoption in March 2012 than he is now; (2) The boys are older now; (3) The family bond is stronger now than it has ever been; (4) DFS has changed its position, which is an extraordinary circumstance, and DFS should not be forced to prosecute a TPR case which it does not want to prosecute; and (5) The children did not have an attorney to advocate for their wishes at the time the March 30, 2012 Order was entered, as the Court did not appoint an attorney for the children until October 2012.

CASA continued to oppose DFS' Motion, arguing that TPR continues to be in the best interest of the children and there are not any different circumstances in the case now than there were when the Court entered the March 30, 2012 Order approving the goal change of TPR.

*Motion to Dismiss the Petition for Termination of Parental Rights and to Reopen Order of March 30, 2012, and Approve Alternate Permanency Goal*

The Court will treat DFS' Motion as three separate motions: (1) A Motion to Reopen pursuant to Family Court Rule of Civil Procedure 60(b); (2) A Motion to

Voluntarily Dismiss the Petition for Termination of Parental Rights pursuant to 41(a)(2); and (3) A Motion to Approve Alternate Permanency Goal of APPLA.

## Motion to Reopen

 The rule regarding motions to reopen judgments is found in Family Court Civil Procedure Rule 60(b), which provides:

On motion and upon such terms as are just, the Court may relieve a party or legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.[3]

The standard utilized to determine whether a party is entitled to relief under Rule 60(b) is as follows:

In order for the Court to grant relief under Rule 60(b), the Court must examine four factors. The moving party must first establish one of the enumerated grounds for relief stated in Rule 60(b). Second, the party must establish that they did not unreasonably delay in filing the motion. Third, the party must show that the outcome of the case will be different if the requested relief is granted. The fourth factor is that the moving party must show that the opposing party will not suffer substantial prejudice if the motion is granted.[4]

DFS does not allege any mistake, newly discovered evidence, fraud, etc., but instead moves for this Court to reopen the March 30, 2012 Order pursuant to Rule 60(b)(6). However, in this case, the Court finds that it is neither procedurally appropriate nor necessary to reopen the judgment in this case. The Court has the authority to review a permanency goal in a dependency case to determine whether that permanency goal remains appropriate without reopening the judgment ordering the initial permanency goal.[5]

Therefore, DFS' Motion to Reopen the March 30, 2012 is hereby **DENIED**. However, because the Court can review a permanency goal to determine if it continues to be appropriate, the Court will consider DFS' Motion to Dismiss Petition for Termination of Parental Rights and Motion to Approve Alternate Permanency Goal based on the evidence provided at the February 7, 2013 hearing to determine whether TPR or another permanency goal is now appropriate in this case.

## Motion to Dismiss Petition for Termination of Parental Rights

 Rule 41(a)(2) states:

---

3. Del.Fam. Ct. R. Civ. P. 60(b).

4. *B.L.W. v. L.W.W.*, No. CS99–03816, 2007 WL 4793898, at *2 (Del.Fam.Ct. Oct. 26, 2007) (*citing M.C.D v. F.C.*, No. CN99–09413, 2003 WL 22476207, at *5 (Del.Fam.Ct. July 7, 2003)).

5. *See DFS v. Lucey*, No. CS99–04298, 2010 WL 2776693, at *6 (Del.Fam.Ct. May 10, 2010) (explaining that the Court is to hold permanency-review hearings on a regular basis after the initial permanency hearing, and one of the purposes of these permanency-review hearings is to determine if the permanency goal remains appropriate).

Except as provided in paragraph (1) of this subdivision of this Rule [petitioner dismissing an action before entry of appearance of adverse party or filing a stipulation of dismissal signed by all parties], an action shall not be dismissed at the petitioner's instance save upon order of the Court and upon such terms and conditions as the Court deems proper. If a counterclaim has been pleaded by a respondent prior to the service upon respondent of the petitioner's motion to dismiss, the action shall not be dismissed against the respondent's objections unless the counterclaim can remain pending for independent adjudication by the Court. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.[6]

■ The Court of Chancery, Superior Court, and Court of Common Pleas all have similarly worded Rules 41(a). The Delaware Supreme Court addressed the standard the courts should use when determining whether to allow a dismissal of an action by a plaintiff pursuant to Rule 41(a)(2) in *Draper v. Gardner Defined Plan Trust*, 625 A.2d 859, 863–64 (Del. 1993). In that case, the Supreme Court reviewed a decision of the Court of Chancery to grant a dismissal pursuant to Rule 41(a)(2). The Supreme Court stated that the Court was proper to look to whether or not there would be any " 'plain legal prejudice' to the defendants in the event of a voluntary dismissal." [7] In determining whether a defendant would suffer "plain legal prejudice," the Court stated that it is appropriate for a Court making the determination of whether to allow the voluntary

dismissal of an action pursuant to Rule 41(a)(2) to look at four factors:

 1) The defendant's effort and expense in preparation for trial;

 2) Excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action;

 3) Insufficient explanation by the plaintiff for the need to take a dismissal; and

 4) Whether or not a motion for summary judgment has been filed by the defendant.[8]

The Superior Court has noted that "typically, the motivation of a plaintiff seeking dismissal under this Rule [41(a)(2)] is so that it can pursue the claim in another jurisdiction." [9]

The procedural posture in ·a Family Court dependency case is different than a typical civil case where plaintiff sues defendant, and then wishes to voluntarily dismiss the petition in order to seek relief in a different forum. In the present case, DFS, as the Petitioner, seeks Court Order allowing it to voluntarily dismiss its Petition for TPR against mother and father. DFS does not wish to take this matter to another forum, but wishes instead to completely forgo trying its case on the Petition for TPR. Further, this case does not simply have a plaintiff versus a defendant. The case also includes a CASA advocating for the children's best interest, and an attorney representing the children's wishes. Accordingly, the Court finds that the above factors are not particularly relevant for the Court to use when determining whether or not to allow a petitioner in a dependency case before this Court to voluntarily withdraw a petition. Accord-

---

6. Del. Fam. Ct. R. Civ. P. 41(a)(2).

7. *Draper v. Gardner Defined Plan Trust*, 625 A.2d 859, 863–64 (Del.1993).

8. *See id.* at 864.

9. *Barrow v. Abramowicz*, C.A. No. 04C–01–151, 2008 WL 1850624, at *1 (Del.Super.Ct. April 17, 2011).

ingly, the Court will look to the evidence presented at the February 7, 2013 hearing to determine if TPR continues to be an appropriate permanency goal or, in the alternative, if the Court should permit DFS to withdraw its Petition for TPR and approve another permanency goal.

If a ground for termination for parental rights exists under Title 13, Section 1103 of the Delaware Code, the Court shall order the termination of parental rights if the Court finds that the termination of existing parental rights and their transfer are in the best interest of the child.[10] In termination of parental rights cases, the standard of proof the Family Court must use is one of clear and convincing evidence.[11] Therefore, to order termination of parental rights, the Court must find by clear and convincing evidence that a ground for termination of parental rights enumerated in Section 1103 exists, and must also find by clear and convincing evidence that termination of parental rights is in the best interest of the child.[12] Section 722 provides that the relevant factors for the Court to consider when determining the best interests of a child are:

(1) The wishes of the child's parent or parents as to his or her custody and residential arrangements;

(2) The wishes of the child as to his or her custodian or custodians and residential arrangements;

(3) The interaction and interrelationship of the child with his or her parents, grandparents, siblings, persons cohabitating in the relationship of husband and wife with a parent of the child, any other residents of the household or persons who may significantly affect the child's best interests;

(4) The child's adjustment to his or her home, school, and community;

(5) The mental and physical health of all individuals involved;

(6) Past and present compliance by both parents with their rights and responsibilities to their child under § 701 of this title;

(7) Evidence of domestic violence as provided for in Chapter 7A of this title; and

(8) The criminal history of any party or any other resident of the household including whether the criminal history contains pleas of guilty or no contest to a conviction of a criminal offense.[13]

Our Supreme Court has noted that in using these factors to determine best interest, "the weight given to each factor will be different in any given proceeding, and '[i]t is quite possible that the weight of one factor will counterbalance the combined weight of all other factors and be outcome determinative in some situations' ".[14]

In the present case, it is unlikely that the Court would be able to find by clear and convincing evidence that TPR is in the children's best interest at a TPR hearing pursuant to the factors set forth in Section 722. In this particular case, the wishes of the children against TPR are so strong that this factor outweighs any factors potentially in favor of TPR. E.B. and J.B., at

---

10. *See* Del.Code Ann. tit. 13, § 1108(a) (2012).

11. *See In re Stevens,* 652 A.2d 18, 23 (Del.1995)(citing *Patricia A.F. v. James R.F.,* 451 A.2d 830 (Del.Super.Ct.1982)).

12. *See Powell v. DSCYF,* 963 A.2d 724, 731 (Del.2008).

13. Del.Code Ann. tit. 13, § 722(a) (2012).

14. *Clark v. Clark,* 47 A.3d 513, 517 (Del.2012) (citing *Fisher v. Fisher,* 691 A.2d 619, 623 (Del.1997)).

twelve and eleven years old, are of an age where they are able to articulate their wishes and give reasons for their preferences. The children have voiced their strong opinions against adoption to nearly everyone involved in this case, and J.B. has stated on numerous occasions that he would act out if DFS were to pursue adoption.

Other best interest factors also weigh against a finding that TPR is in the best interests of the children. It is clear that the boys have an extraordinary bond to their mother, and are now having consistent visitation with her. Since this visitation with mother was implemented, the boys' behavioral issues have been improving. Though CASA argues that TPR is in the children's best interest, CASA has only seen the boys interact with their mother and sisters on one isolated occasion; therefore, CASA cannot accurately present information regarding the children's interaction with their mother. Both DFS and Mr. P, who have been present at numerous visits that the boys have had with mother, testified as to the strong bond between the boys and mother, noting that the boys really care about making their mother proud and her opinion of them. Additionally, the children have become accustomed to living in Mr. P's home. Mr. P and his wife, and Mr. P in particular, have bonded with the children, and although Mr. P and his wife cannot be an *adoptive* resource for the children, they can be a long-term placement and resource for the boys. The boys' behavior continues to improve while they are in the care of Mr. P and his wife, and Mr. P and his wife seem to have a good relationship with mother. Further, Mr. P and his wife continue to facilitate healthy contact between the boys and mother.

It is unlikely that the Court can find by clear and convincing evidence that TPR is in the children's best interest pursuant to Section 722, particularly due to the fact that the children's wishes against adoption are so strong. The Court recognizes a good possibility that if TPR was to go forward, the children may revert back to old behavioral problems and erase all the improvement they have made in the past few months while in Mr. P's home and having consistent contact with mother. Accordingly DFS' Motion to Dismiss the Termination of Parental Rights Petition filed on April 27, 2012 is hereby **GRANTED**. The Court finds that a permanency goal of TPR is no longer in the best interest of the children.

### Motion to Approve Alternate Permanency Goal of APPLA

■ The Family Court may consider a change in the permanency goal for a child upon motion by a party in the case.[15] The Adoption and Safe Families Act ("ASFA"), established by the United States Congress in 1997, aspires to achieve permanency for children by speeding up the welfare process and mandating that states are to make timely permanency decisions for children.[16] Under the ASFA, APPLA is an appropriate permanency plan for a child when "the State agency has documented to the State court a *compelling reason* for determining that it would not be in the best interest of the child to return home, *be referred for termination of parental rights,* or be placed for adoption, with a fit and willing relative, or with a legal guardian."[17] Additionally, Dela-

---

15. *See* DEL.FAM. CT R. CIV. P. 216(e).

16. *See Brown v. DFS*, 803 A.2d 948, 953 (Del. 2002).

17. *See* 42 U.S.C.A. § 675(5)(C)(i) (West 2011) (emphasis added).

ware Family Court Rule of Civil Procedure 216(b) provides that when considering permanency options for a child in a given case, rather than advocating for reunification with parents, TPR and adoption, legal guardianship, or the child being placed with a fit and willing relative, DFS may, at its option, present a case to the Court of "compelling reason(s) to place the child in another acceptable alternative permanent living arrangement on a case by case basis." [18]

In the present case, the Court finds such a compelling reason exists to conclude that a permanency plan of APPLA, and not TPR, is appropriate. Every witness who testified at the February 7, 2013 hearing affirmed the fact the E.B. and J.B. have a strong desire not to be adopted, and an extremely strong bond with their mother. Even those who testified that TPR, and not APPLA, was in the best interest of the children noted that it would not be in the best interest of the children for their contact with mother to be completely severed. Further, Ms. Sabanayagam opined that if the children were to be placed for adoption, it would be imperative for the adoptive family to be open to continuing contact between the boys and mother.

Once a Court orders the termination of parental rights, "the rights, duties, privileges, and obligations recognized by law between the person or persons whose parental rights are terminated and the child shall forever cease to exist." [19] Further,

upon the issuance of a decree of adoption, the adopted child shall no longer be considered the child of his or her birth parent or parents and shall no longer be entitled to any of the rights or privileges or subject to any of the duties or obligations of a child with respect to the birth parent or parents. [20]

Delaware does not recognize "open adoptions;" once a parent's rights are terminated and the child is adopted, the adoptive parents have full legal rights over the child, and the birth parent no longer has any legal rights to that child. Accordingly, although those in favor of TPR in this case still stressed the importance of the children being able to see their mother if and when they are adopted, there are simply no enforceable legal rights available under Delaware law which would ensure that mother would continue to see the children if her parental rights were terminated. Even if the boys were adopted by a family that stated its openness to continuing contact with mother, the family could potentially change its mind at any time after the TPR and adoption and prohibit mother from seeing the boys, and at that point mother would have no legal right to have contact with the boys. On the other hand, if the permanency goal for the boys was APPLA, even though the boys would be placed outside the home and living with another family, mother would still retain the legal, enforceable right to have contact with the children.

In this case, the children are placed in a foster home that can be a long-term placement for them, with foster parents who love them and to whom they have a close relationship. Additionally, the foster parents understand the importance of continuing contact between the boys and mother, and have been ensuring that weekly visits happen between the boys and mother for the past six months. Further, if mother's parental rights are not terminated, mother will still have the legal right to have con-

18. DEL.FAM. CT. R. CIV. P. 216(b).

19. DEL.CODE ANN. tit. 13, § 1113(a) (2012).

20. DEL.CODE ANN. tit. 13, § 919(b) (2012).

tact with the boys, which is undisputedly what is in the boys' best interest.

■ APPLA is not the ideal permanency goal in every case, and in many cases where reunification with parents is no longer an appropriate goal, the goal of termination of parental rights for purposes of adoption is favored. However, under "compelling" circumstances, APPLA may be an appropriate permanency goal given the unique circumstances of a case. In this case, the Court is satisfied that such compelling circumstances exist. Everyone involved with the case affirmed that it is in the best interest of E.B. and J.B. to remain in contact with their mother. If mother's parental rights in these children are terminated, this is no guarantee that contact between mother and the boys would continue to occur. Because the contact between mother and the boys is so important to the well-being of the boys, the Court finds that it would be inappropriate in this case to proceed with TPR and risk that contact eventually being severed.

For the foregoing reasons, DFS' Motion to Approve Alternate Permanency Goal of APPLA is hereby **GRANTED.** The permanency goal in this case shall be changed from termination of parental rights for the purposes of adoption to APPLA.

### Conclusion

The Court finds that a permanency goal of termination of parental rights for the purposes of adoption is no longer in the best interest of E.B. and J.B. Accordingly, the Petition for Termination of Parental Rights filed by DFS on April 27, 2012 is hereby dismissed. The permanency goal in this case shall be changed to APPLA, as that is the appropriate permanency goal in this particular case. Additionally, the Court finds that DFS has made reasonable efforts toward permanency for E.B. and J.B. under the permanency goal of APPLA.

The Court will hold a permanency-review hearing in the matter on **June 13, 2013 at 11:00 a.m. The parties, witnesses and counsel are advised to be present *fifteen minutes early* in order that appropriate preparation for the hearing can take place.** Because the permanency goal in this matter is now APPLA, Mr. Hudson is hereby excused from further representation of mother.

**IT IS SO ORDERED.**