# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| WILLIAM WEST, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellant, | § | No. 230, 2022 |
| | § | |
| v. | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| ACCESS CONTROL RELATED | § | |
| ENTERPRISES, LLC, LLR EQUITY | § | |
| PARTNERS, IV, L.P., LLR EQUITY | § | C.A. No. N17C-11-137 |
| PARTNERS PARALLEL IV, L.P., | § | |
| SETH LEHR, an individual, | § | |
| DAVID STIENES, an individual, | § | |
| GREG CASE, an individual, | § | |
| ROBERT CHEFITZ, an individual, | § | |
| and JOSEPH GRILLO, an individual, | § | |
| | § | |
| Defendant Below, | § | |
| Appellee. | § | |

Submitted: February 22, 2023
Decided: April 13, 2023

Before **SEITZ**, Chief Justice; **VAUGHN** and **TRAYNOR**, Justices.

Upon appeal from the Superior Court. **AFFIRMED**.

Geoffrey G. Grivner, Esquire, Kody M. Sparks, Esquire, Buchanan Ingersoll & Rooney PC, Wilmington, Delaware; Ekwan E. Rhow, Esquire (*argued*), Timothy B. Yoo, Esquire, Kate S. Shin, Esquire, Alexander H. Tran, Esquire, Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, P.C., Los Angeles, California; *for Plaintiff Below, William West*.

Jody C. Barillare, Esquire, Amy M. Dudash, Esquire, Morgan, Lewis & Bockius LLP, Wilmington, Delaware; Michael L. Banks, Esquire *(argued)*, Vishal H. Shah, Esquire, Morgan, Lewis & Bockius LLP, Philadelphia, Pennsylvania; *for Defendant*

*Below, Appellee Access Control Related Enterprises, LLC, LLR Equity Partners, IV, LLP, LLR Equity Partners Parallel IV, L.P., Seth Lehr, David Stienes, Greg Case, Robert Cheftiz, and Joseph Grillo.*

**SEITZ**, Chief Justice:

William West, the founder of Access Control Related Enterprises, LLC ("ACRE"), was forced out as an officer of the company by its majority owners, LLR Equity Partners, IV, L.P. and LLR Equity Partners Parallel IV, L.P. (collectively, "LLR"). He responded by filing a wrongful termination suit against ACRE and others in California state court. The California court stayed the case based on the forum selection provisions in the controlling agreements that designated Delaware as the exclusive forum for disputes arising out of the agreements. After a failed detour to Delaware District Court, West filed the same claims in the Delaware Superior Court.

At first, the Superior Court ordered that the case be transferred to the Court of Chancery because the latter had exclusive jurisdiction over West's breach of fiduciary duty claim. In response, West chose not to transfer the case, withdrew his breach of fiduciary duty claim, and persuaded the California court to lift the stay. The Superior Court then reversed course and decided to continue exercising jurisdiction over the case. It also denied West's multiple motions to dismiss the Delaware case in favor of the California litigation. After more motion practice by both sides, a Delaware jury eventually found against West on his breach of contract claim.

West has not appealed the jury's adverse verdict. Instead, he seeks to undo his loss in Delaware by challenging the Superior Court's procedural rulings. First, he argues that the Superior Court no longer had jurisdiction once it issued the order transferring the case to the Court of Chancery. According to West, the court's unprompted decision to continue to exercise jurisdiction was improper. Second, he claims that the Superior Court improperly denied his motions for voluntary dismissal. And third, he believes that if the Superior Court had applied *forum non conveniens*, it would have dismissed the Delaware case in favor of the California litigation.

We affirm the Superior Court's decision to keep the dispute in Delaware. The Superior Court did not lose jurisdiction when it issued the transfer order. The transfer never occurred because West did not take the steps to effectuate the transfer to the Court of Chancery. Also, the court did not exceed its broad discretion when it denied West's motions to dismiss. And *forum non conveniens* does not apply when the parties have contracted for a specific forum to resolve their disputes.

## I.

### A.

In 2012, West, a California resident, co-founded ACRE, a Delaware limited liability company. A year later, two Delaware limited partnerships – LLR Equity Partners, IV, L.P. and LLR Equity Partners Parallel IV, L.P. – became ACRE's

majority owners and controlled its board. The LLR-controlled board appointed West

ACRE's Chief Financial Officer and Chief Operating Officer. The parties entered

into eight agreements, four of which designated a state or federal court in Delaware

as the exclusive forum to resolve disputes among the parties.[1] The Securityholders'

Agreement and LLC Agreement both designated the Court of Chancery and any

federal court in Delaware for dispute resolution, while the Severance Agreement and

Noncompetition Agreement both designated any federal or state court in Delaware.

The Securityholders' Agreement also covered the rights and obligations of ACRE's

securities, and the Severance Agreement governed the employment relationships.

The four other agreements either contained no forum selection provision or had a

non-Delaware forum selection provision. Three of the agreements provided the

grounds under which West could be terminated as an ACRE employee.

The parties' relationship deteriorated for reasons not relevant to our decision,

which led ACRE's LLR-controlled board to terminate West for cause as ACRE's

CFO and COO. In 2016, West filed suit in the Los Angeles Superior Court against

LLR and claimed wrongful termination, conversion, and breach of fiduciary duty,

---

[1] App. to Opening Br. at A821-33 (Equity Incentive Plan); A834-44 (Noncompetition Agreement); A917-76 (Securityholders' Agreement); A980-84 (Equity Award Agreement); A1124-30 (Severance Agreement); A1147-99 (LLC Agreement); A2587-639 (Contribution and Purchase Agreement); A2768-92 (Securities Purchase Agreement).

and sought declaratory relief.[2] LLR responded by moving to dismiss or stay the action.[3] The Los Angeles Superior Court granted the motion and stayed the case based on the forum selection provisions in the agreements.[4]

B.

In August 2017, West brought the same claims in the United States District Court for the District of Delaware. The District Court dismissed the action for lack of diversity jurisdiction. A few months later, West filed again in the Delaware Superior Court and added a breach of contract claim.[5] LLR moved to dismiss the case for lack of jurisdiction, or alternatively, asked the Superior Court to transfer the case to the Court of Chancery to decide West's equitable breach of fiduciary duty claim. The Delaware Superior Court granted the motion and permitted West to transfer the case to the Court of Chancery.[6] As the court reasoned, the Court of Chancery could exercise jurisdiction over the legal and equitable claims.

West chose not to take the steps necessary to transfer the case and instead voluntarily dismissed his breach of fiduciary duty claim.[7] He then moved to amend his complaint by dropping the breach of fiduciary duty claim and adding three new

---

[2] *Id.* at A859-63 (West's original complaint filed with the Los Angeles Superior Court). The Defendants also included ACRE and affiliates of ACRE and LLR. They will be referred to collectively as LLR.
[3] *Id.* at A515 (Los Angeles Superior Court May 2, 2017 Order).
[4] *Id.* at A514-25 (Los Angeles Superior Court May 2, 2017 Order).
[5] *Id.* at A631-62 (West's original complaint filed with the Delaware Superior Court).
[6] *Id.* at A738 (Delaware Superior Court's June 2018 Order).
[7] *Id.* at A887 (Notice of voluntary dismissal of the breach of fiduciary claim).

claims: breach of the implied covenant of good faith and fair dealing, tortious interference with contract, and tortious interference with prospective business relations.[8]

The Superior Court granted West's motion to amend his complaint,[9] which prompted LLR to file a partial motion to dismiss. In June 2019, the court granted the motion in part and denied it in part. It dismissed the breach of implied covenant of good faith and fair dealing claim and allowed the other claims to proceed.[10]

C.

About six months later, LLR filed a renewed motion to dismiss the Superior Court action and to transfer the remaining claims to the Court of Chancery. At a January 20, 2020 hearing, the court granted the motion, and found that the Court of Chancery had jurisdiction under the Limited Liability Company Act, 6 *Del.* C. § 18-111, to hear West's claims.[11] It also concluded that the remaining claims could not be tried without referring to or interpreting the Securityholders' Agreement, which

---

[8] *Id.* at A68-110 (West's motion to amend the original complaint).

[9] *Id.* at A162-65 (Delaware Superior Court's Order granting West's motion to amend the original complaint).

[10] *Id.* at B47-64 (Delaware Superior Court's Order partially granting LLR's partial motion to dismiss the amended complaint).

[11] App. to Opening Br. at A1287-89 (Transcript of the January 20 Hearing). Section 18-111 provides that "[a]ny action to interpret, apply or enforce the provisions of a limited liability company agreement, or the duties, obligations or liabilities of a limited liability company to the members or managers of the limited liability company, or the duties, obligations or liabilities among members or managers and of members or managers to the limited liability company, or the rights or powers of, or restrictions on, the limited liability company, members or managers, or any provision of this chapter, or any other instrument, document, agreement or certificate contemplated by any provision of this chapter, may be brought in the Court of Chancery."

designated either a Delaware federal court or the Court of Chancery as the forum to resolve disputes between the parties.

Reacting to the Superior Court's decision, West returned to California and asked the Los Angeles Superior Court to lift the 2017 stay. In June 2020, the California court lifted the stay. It reasoned that enforcing the forum selection clause and requiring West to litigate in the Court of Chancery would force West to forfeit his right to a jury trial.[12] West returned to Delaware and asked the Delaware Superior Court to stay the case in favor of the California action.

After an August 20, 2020 teleconference, the Superior Court observed in a September 1, 2020 order that LLR had withdrawn its request to transfer the case to the Court of Chancery and was prepared to proceed to trial in the Superior Court. The court also noted that all discovery and most pretrial proceedings had been completed and that it would continue to exercise jurisdiction over the case.[13]

A day before the Superior Court issued its September 1, 2020 order, West filed a motion and asked the Superior Court to maintain the transfer order or to dismiss the case without prejudice to allow him to proceed in California. At a December 9, 2020 hearing, the court denied West's motion.[14] It "incorporated" its January 20, 2020 finding – that the underlying case is governed by § 18-111 and

---

[12] *Id.* at A1427-36 (Los Angeles Superior Court's Order lifting the stay).
[13] *Id.* at A1305-06 (Delaware Superior Court's September 1, 2020 Order).
[14] *Id.* at A1669-722 (Delaware Superior Court December 9, 2020 hearing).

Delaware has a strong interest in the governance of Delaware LLCs – as one of the bases for its ruling.[15] It also re-emphasized its previous finding that the forum selection provisions controlled. The court noted further that LLR had moved to stay the California case three months prior to its ruling. It found that dismissal was inappropriate considering the pending motion to stay.[16] For the January 20, 2020 transfer order, it found that the transfer was moot.

At this point, LLR had withdrawn its request to transfer the case to the Court of Chancery, and the breach of fiduciary duty claim was no longer part of the case. The court, however, gave West the option to reinstate the breach of fiduciary duty claim if he wanted to proceed on that claim in Delaware.[17] It also noted the possibility of the Court of Chancery requesting the Chief Justice to designate a judge from the Superior Court to serve as a Vice Chancellor – because of the Superior Court's experience with jury trials – if the case was transferred to the Court of Chancery.[18]

---

[15] *Id.*

[16] *Id.* at A1710. In October, 2020, the Los Angeles Superior Court denied LLR's motion to stay because West could not obtain a jury trial on all his claims in Delaware. LLR appealed the denial to the California Second Appellate District. The appellate court denied the petition in February 2021. In light of the Superior Court's December 9, 2020 ruling, LLR again moved to stay the California action in the Los Angeles Superior Court. The California court denied the motion because it was not sure West could obtain a jury trial on his breach of fiduciary duty claim in Delaware. It expressed doubts about the Delaware Superior Court's December 9, 2020 ruling and thought it was unclear which Delaware court would hold a jury trial and whether the breach of fiduciary duty claim would be at issue.

[17] *Id.* at A1718.

[18] *Id.* at A1711-12.

West petitioned for certification of an interlocutory appeal of the Superior Court's December 9, 2020 ruling.[19]  The Superior Court denied the application,[20] and this Court refused the request for certification.[21]

## D.

Not content to live with the Superior Court's rulings, in July 2021, West filed another motion to dismiss the Delaware case in favor of the California action.  West relied heavily on the California court's finding that he had a right to a jury trial that would be waived should the case proceed in Delaware.  He also argued that the Delaware Superior Court's concerns at the initial motion hearing had been resolved. He highlighted the fact that the California court had ruled in his favor on LLR's motion to stay, and that a jury trial was scheduled to begin in California on May 23, 2021.  West argued further that LLR would not be prejudiced by proceeding in California.[22]

The Delaware Superior Court denied the motion on September 27, 2021.[23] The court gave several reasons for its denial.[24]  First, it noted that there had been

---

[19] *Id.* at A1724-33 (West's application for certificate of an interlocutory appeal to the Delaware Superior Court), A1794-97 (West's application for certificate of an interlocutory appeal to this Court).

[20] *Id.* at A1790-93 (The Delaware Superior Court Order).

[21] *Id.* at A1798.

[22] The California jury trial has not taken place yet.  During oral argument, the parties informed the Court that the California trial is scheduled for April 17, 2023.

[23] *Id.* at A2175-77 (The Delaware Superior Court's Order).

[24] *Id.* at A1917-18.

extensive preparation and expenses to get the case trial-ready in Delaware. Second, it viewed the voluntary dismissal of the breach of fiduciary duty claim as "an acknowledgement that [the remaining] claims [could] be decided separately, in theory."[25] Lastly, it noted that the parties were sophisticated, and they had contracted for a forum selection clause that the court should honor. On October 14, 2021, West tried his luck again by filing a motion for reargument of the renewed motion to dismiss without prejudice. The court denied the motion.[26]

After a 6-day trial limited to West's breach of contract claim, on June 2, 2022, the jury returned a defense verdict and found that LLR had properly terminated West for cause under the applicable agreements.[27]

E.

On appeal, West does not challenge the jury's adverse verdict. West has only appealed from the Superior Court's September 1, 2020 order, in which the court decided to continue exercising jurisdiction over the case, and the court's denials of his multiple motions for voluntary dismissal without prejudice. West argues that the court erred when it failed to satisfy the requirements of Superior Court Civil Rule 60 by transferring the case under 10 *Del.* C. § 1902 and then continuing to exercise jurisdiction. According to West, Rule 60 does not authorize the court on its own to

---

[25] *Id.* at A1917.
[26] *Id.* at A2175-77 (The Delaware Superior Court's Order denying the motion).
[27] *Id.* at A2259 (The jury verdict).

11

relieve a party from a transfer order without a motion. Next, West argues that once the court issued the transfer order at the January 20, 2020 hearing, it no longer had jurisdiction over the case. Thus, he claims, the court lacked jurisdiction to issue its later rulings.

Regarding the motions for voluntary dismissal, West contends that the court failed to apply the plain legal prejudice test under *Draper v. Paul*,[28] and that error alone requires reversal. He also claims that even had the court applied the four-factor test under *Draper*, LLR could not show plain legal prejudice. Finally, he asserts that, under *McWane v. McDowell*[29] and its *forum non conveniens* analysis, the court should have deferred to the California action.

## II.

On appeal we review *de novo* whether the trial court misinterpreted the transfer statute and failed to apply *forum non conveniens*.[30] We review the trial court's denial of West's motions to dismiss to see whether the court exceeded its discretion.[31]

---

[28] *Draper v. Paul N. Gardner Defined Plan Tr.*, 625 A.2d 859 (Del. 1993).
[29] *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.*, 263 A.2d 281 (Del. 1970).
[30] *Salzberg v. Sciabacucchi,* 227 A.3d 102, 112 (Del. 2020).
[31] *Draper*, 625 A.2d at 860.

A.

Under 10 *Del.* C. § 1902, a court can transfer an action to another court for lack of jurisdiction.[32]  Such transfer orders, however, are not self-executing, and the transfer only becomes effective after a party files a written election of transfer to the transferee court within 60 days of the order.[33]  If a written election is filed, all court papers "in the court where the proceeding was originally instituted [are] [] delivered . . . to [the] court to which the proceeding is transferred."[34]

West did not file an election to transfer the case to the Court of Chancery. Instead, he dismissed his breach of fiduciary duty claims and returned to California where he filed a motion to lift the 2017 stay.  Without a written election, the Superior Court docket was never delivered to the Court of Chancery.  It is "well-established that a transferor court loses jurisdiction to reconsider its order for transfer once the records in the transferred action are physically transferred to and received by the transferee court."[35]  In this case, the record transfer never occurred, and jurisdiction remained with the Superior Court.

---

[32] 10 *Del.* C. § 1902.
[33] *Id.*
[34] *Id.*
[35] *Database Am., Inc. v. Bellsouth Advert. & Pub. Corp.*, 825 F. Supp. 1216, 1221 (D.N.J. 1993) (citing *Wilson-Cook Med., Inc. v. Wilson*, 942 F.2d 247, 250 (4th Cir. 1991)); *see also In re Briscoe*, 976 F.2d 1425, 1427 (D.C. Cir. 1992) (D.C. Cir. 1992) ("The basic rule in civil practice is that if a case is physically transferred before an appeal or a petition for mandamus has been filed, the court of appeals in the transferor circuit has no jurisdiction to review the transfer.") (citing *Starnes v. McGuire*, 512 F.2d 918 (D.C. Cir. 1974)).

13

West also argues that the Superior Court's continued jurisdiction after issuing the transfer order violated Superior Court Civil Rule 60(b). Under the Rule, "[o]n motion and upon such terms as are just, the Court may relieve a party or a party's legal representative from a *final* judgment, order, or proceeding."[36] But Rule 60(b) applies only to final orders. As explained in the advisory notes to the comparable Federal Rule of Civil Procedure 60, "the addition of the qualifying word 'final' emphasizes the character of the judgments, orders or proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule.[37] Transfer orders are interlocutory. Thus, Rule 60 does not apply to the transfer order in this case. The Superior Court did not lose jurisdiction to take further action in the case.

### B.

West argues that the trial judge failed to consider the *Draper* factors before denying West's voluntary motion to dismiss his Delaware case. According to West, had the court applied the factors, it would have granted the motion. LLR counters that the *Draper* factors are neither exclusive nor mandatory, and in any event, the court properly considered the factors through the parties' arguments, and explicitly considered one of the factors.

---

[36] Super. Ct. Civ. R. 60 (emphasis added).
[37] Fed. R. Civ. P. 60 advisory committee's note.

14

Before granting a motion to dismiss under Rule 41(a)(2), a court must determine whether the defendant would suffer "plain legal prejudice."[38] In *Draper*, the Court set forth four factors for a court to consider when deciding a motion to dismiss or stay: (1) the defendant's effort and expense in preparation for trial; (2) excessive delay and lack of diligence on the part of the plaintiff; (3) insufficient explanation for the need to take a dismissal; and (4) whether a motion for summary judgment has been filed by the defendant.[39]

These factors, however, are merely guideposts. They are neither exclusive nor mandatory, and a finding on every factor is not required to grant a motion to dismiss. The discretion ultimately rests with the trial judge.[40] As the Seventh Circuit noted in *Kovalic v. DEC*, "[t]he enumeration of the factors to be considered . . . is not equivalent to a mandate that each and every factor be resolved in favor of the moving party before dismissal is appropriate. It is rather simply a guide for the trial judge, in whom the discretion ultimately rests."[41]

---

[38] *Draper*, 625 A.2d at 863 (citing *Pace v. S. Exp. Co.*, 409 F.2d 331 (7th Cir. 1969)).

[39] *Id.* at 863-64.

[40] *Stillwater Mining Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*, 2023 WL 165968, *10 (Del. Jan. 12, 2023) (citing *AT&T Wireless Servs., Inc. v. Fed. Ins. Co.*, 2005 WL 2155695, *5 (Del. Super. Ct. Aug. 18, 2005)) ("It is well within the trial court's discretion to deny a motion for voluntary dismissal based on forum shopping concerns.").

[41] *Kovalic v. DEC Int'l, Inc.*, 855 F.2d 471, 474 (7th Cir. 1988) (alteration in original) (citing *Tyco Labs., Inc. v. Koppers Co., Inc.*, 627 F.2d 54, 56 (7th Cir. 1980)); *see also Conagra/Pilgrim's Pride, Inc. v. Green*, 954 A.2d 909 (Del. 2008) ("Whether the party suffers 'plain legal prejudice' as a result of such a voluntary dismissal, the trial judge, in his discretion, may consider [the *Draper*] factors . . . .").

Here, strong considerations favored denial of the motions to dismiss. The court explicitly considered one of the strongest factors in this case – the effort and expense incurred in the Delaware case.[42] As early as August 2020, before both motion hearings, the parties had already engaged in extensive trial preparation and litigation expense. All discovery and most pretrial proceedings had been completed.[43] In addition to effort and expense, the court relied heavily on the forum selection provisions in the various agreements. It noted that both West and LLR were sophisticated parties and had full knowledge of the waiver of jury trial rights that formed the basis for West's motions to dismiss. Further, West's counsel agreed at the December 9, 2020 hearing that West was aware at the time of contracting that there was a possibility that his right to a jury trial could be waived if the case ended up in the Court of Chancery.[44] The court specifically found that "[West] either was aware of, or certainly should have been aware, when the Court of Chancery was listed as part of the forum selection clause, of the process and procedures in that court. There was no mystery about that; that is something that is very well-known."[45]

This case is also unusual in that the defendant is the one who is defending the plaintiff's choice of forum. Typically, the first suit is initiated by the plaintiff and

---

[42] App. to Opening Br. at A1917 (September 27 hearing).
[43] *Id.* at A1306 (September 1 Order maintaining jurisdiction).
[44] App. to Opening Br. at A1682 (December 9 hearing).
[45] *Id.* at A1714 (December 9 hearing).

the defendant files a second suit elsewhere. But West initiated both suits here. While LLR filed the 2017 motion to stay the California case, this atypicality nonetheless tilts in favor of LLR as it is not the one who initiated the Delaware action. The Superior Court did not exceed its discretion in denying the motions to dismiss.

C.

Finally, West argues that *McWane* required the Delaware Superior Court to defer to the California litigation. Under *McWane,* the court should dismiss a second-filed Delaware case when, among other concerns, there is a prior action pending in another jurisdiction, the parties and issues involved are the same, and the prior court is capable of doing prompt and complete justice.[46] West claims that the California court found that the Securityholders' Agreement's forum selection clause was not enforceable because it would result in West waiving his right to a jury trial. He argues further that the Securityholders' Agreement is controlling and does not designate the Delaware Superior Court as one of the chosen forums. LLR counters that *McWane* does not apply where the parties contracted for a specific forum. It contends that both the California and Delaware courts found that the forum selection provisions were enforceable, meaning *McWane* did not apply.

LLR is correct that *McWane* does not apply when the parties contracted for a specific forum. For instance, in *Ingres Corp. v. CA, Inc.*, the defendant brought the

---

[46] *McWane*, 263 A.2d at 283.

17

first-filed action in California and the plaintiff brought the second-filed action in Delaware.[47] The defendant moved to stay the Delaware action in favor of the California action. The trial court denied the motion because of a forum selection provision in two contracts that designated either Delaware or New York as the required forum. We upheld the ruling and explained "that where contracting parties have expressly agreed upon a legally enforceable forum selection clause, a court should honor the parties' contract and enforce the clause, even if, absent any forum selection clause, the *McWane* principle might otherwise require a different result."[48] We went on to repeat our prior holdings on forum selection provisions, notably that "[they] are presumptively valid and should be specifically enforced unless the resisting party [ ] clearly show[s] that enforcement would be unreasonable and unjust, or that the clause [is] invalid for such reasons as fraud and overreaching."[49]

Here, the Superior Court relied heavily on the various agreements among the parties and their Delaware forum selection provisions. West argues that the controlling agreement is the Securityholders' Agreement, which does not specify the Delaware Superior Court as a selected forum. But the Superior Court's rulings at both hearings do not rest solely on the forum selection clause in the Securityholders'

---

[47] 8 A.3d 1143, 1145 (Del. 2010).
[48] *Id.*
[49] *Id.* at 1146 (alterations in original) (internal quotation marks omitted) (quoting *Capital Grp. Cos., Inc. v. Armour*, 2004 WL 2521295 (Del. Ch. Oct. 29, 2004)).

Agreement. While it was aware of the forum selection clause in the Securityholders' Agreement, it ultimately denied the motions because of the forum selection provisions in the other agreements.[50]

The court also believed that the forum selection clause in the Securityholders' Agreement applied only to the breach of fiduciary claim, which was the basis for its initial decision to transfer the case on January 20, 2020:

> The parties' choice of forum is enforceable so long as the Court in which the forum is selected has jurisdiction. And in this case Title 16, Section 18-111, titled, "Interpretation and Enforcement of Limited Liability Company Agreement" is very broad. And, upon close, questioning it appears to the Court that this litigation cannot be either bifurcated or tried in a manner in there is not a reference to or interpretation of the Securityholders' Agreement, which is an agreement which I find falls within Section 18-111.[51]

In contrast, the forum selection clause in the Severance Agreement applies to the breach of contract claim, which was ultimately heard and decided at trial. This case is no different from *Ingres*, in which the trial judge was faced with forum selection provisions in multiple agreements. The Superior Court "consider[ed] the entire collection of related contracts"[52] and concluded that the forum selection clause in at least the Severance Agreement controlled for purposes of trying the breach of contract claim. West does not challenge the enforceability of the Severance

---

[50] The court noted at the September 27, 2021 hearing: "the overarching reason that I am keeping them here is that these sophisticated parties entered into what I have viewed and found to be a valid forum selection clause." App. to Opening Br. at A1918 (September 27 hearing).

[51] *Id.* at A1287 (January 20 hearing).

[52] *Ingres*, 8 A.3d at 1146.

Agreement and its forum selection provision.  Thus, the Superior Court did not err by not applying the *McWane* factors to its stay decision.

III.

We affirm the judgment of the Superior Court.